

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

06-19-00101-CV

_____

IN THE INTEREST OF B.L.H., A CHILD

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 480-18

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# OPINION

The Department of Family and Protective Services (the Department) filed a petition to terminate Krystal's parental rights to her child, Bailey.[1] The trial court terminated Krystal's parental rights after finding (1) she knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered her physical or emotional well-being, (3) she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain Bailey's return after she had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of her removal for abuse or neglect, (4) she used a controlled substance in a manner that endangered the health or safety of the child as described in Section 161.001(b)(1)(P), and (5) that termination of Krystal's parental rights was in Bailey's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), (b)(2) (Supp.).

On appeal from the termination of her parental rights, Krystal argues that the evidence is legally and factually insufficient to support the trial court's findings. Because we find the evidence sufficient to support both the trial court's findings on predicate Grounds D and E and its conclusion that terminating Krystal's parental rights was in Bailey's best interests, we affirm the trial court's judgment.

---

[1]To protect the confidentiality of the child involved, we refer to all parties by pseudonym. *See* TEX. R. APP. P. 9.8(b)(2).

## I.      Factual and Procedural Background

Brittany Drayden, the Department's investigator, testified that the Department's involvement began after a vehicle occupied by Krystal and her boyfriend, Shannon Shelton, ran over eight-year-old Bailey. The accident caused serious injuries requiring more than one surgery, including burns likely suffered from being pinned under the vehicle's exhaust pipe. Bailey's doctors anticipated that she would require additional surgeries on her arm after growth spurts to prevent scar tissue from hindering her range of motion.

According to Drayden, Krystal admitted she used drugs during Bailey's conception and reported that Bailey was diagnosed with autism and was mostly nonverbal. Krystal told Drayden she had been addicted to methamphetamine in the past, but claimed she was no longer addicted. Even so, Krystal admitted she used methamphetamine with Shelton in her bedroom while the child was in the living room, a few hours before Bailey's accident. Krystal also admitted she left Bailey with her brother, who also used methamphetamine, while she smoked marihuana just two days before the accident. Shelton, thirty-three at the time of trial, told Drayden he had used methamphetamine since he was thirteen years old. Drayden testified that, after an intake in 2013, Krystal tested positive for methamphetamine, failed to maintain sobriety while in her family-based safety services program, and was unsuccessfully discharged from an inpatient drug treatment program.

Testimony from Karen Chism, a conservatorship worker for the Department, showed that Krystal did not comply with her family services plan in this case either. Chism testified that Krystal attended two counseling and a few Celebrate Recovery sessions, but never returned, citing

3

transportation issues as an excuse. She said that Krystal "wasn't very involved in initiating services" required in her family service plan, never received assistance on parenting a special needs child, and was difficult to contact at times. Although Bailey was bonded to Krystal and "was excited to see her when she would walk through the door," Krystal missed six to eight visits with the child. Also, Krystal continued to test positive throughout the pendency of the case. The Department introduced laboratory reports showing that, after the Department filed its petition, Krystal tested positive for methamphetamine in November 2018 and in January, February, March, May, and July 2019.[2] Chism also said that Krystal tested positive for methamphetamine after her release from a twenty-eight-day inpatient drug treatment program.

At trial, Krystal testified that she grew up in an abusive home and began using marihuana and alcohol when she was just five years old. Krystal, who was fifty, admitted that she started using methamphetamine at age thirty and had struggled with addiction for her entire life. She testified that she worked odd jobs and was unable to estimate her monthly pay, but said she made enough to provide for Bailey's needs. Krystal testified that she loved Bailey and had a home with running utilities and food for her. Chism believed that Krystal's home was inappropriate for Bailey while Krystal was still using drugs.

Eugenia Mizell, a Court Appointed Special Advocate, testified that Bailey was placed with a "very loving" family, had a routine, appeared to enjoy school, and was "doing really well."

---

[2]Krystal claimed surprise by the positive results of the drug tests following her release from the inpatient drug treatment program in early May 2019 because she was "150 days clean." According to the laboratory reports, the amount of methamphetamine found in Krystal's hair-follicle specimen was higher in July 2019 than it had been in all the other tests conducted that year. She attempted to explain this result by blaming her sexual relationship with a man who was using "extreme amounts" of methamphetamine, allegedly without her knowledge.

4

Mizell testified that Bailey liked her foster parents, who planned to be a "long term placement," and were considering possibly adopting the child. Based on her history of drug use, Mizell believed Krystal was unable to provide for her autistic child and that termination of her parental rights was in Bailey's best interests. Chism agreed that Bailey's foster family was providing for Bailey's special needs, it was in Bailey's best interests for Krystal's parental rights to be terminated, and the foster family wanted to adopt Bailey.

After hearing this evidence, the trial court terminated Krystal's parental rights.

## II.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that

termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.

2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *C.H.*, 89 S.W.3d at 26)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26)).

## III. Sufficient Evidence Supported the Trial Court's Ground D and E Findings

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362); citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)). Even so, in *In re N.G.*, the Texas Supreme Court held that due process demands that we review the evidence supporting findings under Grounds D and E when they are challenged

7

on appeal because termination of parental rights under these grounds "may have implications for . . . parental rights to other children." *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam). As a result, we focus our analysis on Grounds D and E.

### A.   Termination of Parental Rights Under Ground D

Ground D permits a predicate finding on proof that a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child." TEX. FAM. CODE ANN. 161.001(b)(1)(D). Under this ground, "we must examine the time before the children's removal to determine whether the environment itself . . . [endangered] the child's physical or emotional well-being." *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re L.E.S.*, 471 S.W.3d 915, 923 (Tex. App.—Texarkana 2015, no pet.); *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.).

"It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *L.E.S.*, 471 S.W.3d at 923. "A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). "[S]ubsection (D) permits termination [of parental rights] based on a single act or omission [by the parent]." *L.C.*, 145 S.W.3d at 797; *see In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied).

8

Krystal admitted that she struggled with addiction and used drugs during Bailey's conception. In 2013, when Bailey was three, Krystal was unable to complete an inpatient drug treatment program. She left Bailey in the care of her methamphetamine-user brother while she smoked marihuana outside of the home. Krystal also chose to date a boyfriend who used methamphetamine with her while the child was in the home. We have previously said that drug use in the home while a child is present places a child in physical danger. *In re D.G.*, No. 06-15-00025-CV, 2015 WL 6520251, at *7 (Tex. App.—Texarkana Oct. 28, 2015, pets. denied). Krystal admitted that she smoked methamphetamine just hours before an accident that caused Bailey's serious injuries. Because Krystal tested positive for methamphetamine on the day of the accident after Bailey was taken to the hospital, the trial court could find that Krystal was under the influence of methamphetamine at the time of the accident. Chism believed that Krystal's home was inappropriate for Bailey while Krystal was still using drugs.

Based on the totality of the evidence presented and the fact that "illegal drug use by a parent . . . supports the conclusion that the child[]'s surroundings endanger their physical or emotional well-being," we find the evidence legally and factually sufficient to support the trial court's Ground D finding. *L.E.S.*, 471 S.W.3d at 925 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)); *see In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.).

**B.      Termination of Parental Rights Under Ground E**

Ground E requires a finding that a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-

9

being of the child." TEX. FAM. CODE ANN. 161.001(b)(1)(E). Under Ground E, "it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 367). Termination under this ground must "be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))); *see Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 366–67. "The conduct to be examined includes what the parent did both before and after the child was born." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied).

Krystal testified that she struggled with addiction for her entire life. "[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and h[er] ability to parent may establish an endangering course of conduct." *J.L.B.*, 349 S.W.3d at 848 (quoting *N.S.G.*, 235 S.W.3d at 367–68); *see In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."). "Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001[b](1)(E)." *Walker v. Tex. Dep't Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Vasquez v. Tex. Dep't Protective & Regulatory Servs.*, 190 S.W.3d 189, 195–96 (Tex. App.—Houston [1st

10

Dist.] 2005, pet. denied) ("terminating parental rights despite there being no direct evidence of parent's continued drug use actually injuring child")).

The evidence at trial showed that Krystal used drugs during the pendency of the case. Although she completed an inpatient drug treatment program, drug tests conducted after her release showed high levels of methamphetamine in her system. Krystal also admitted that she dated a man that used an "extreme amount" of methamphetamine after her release from the inpatient drug treatment program, demonstrating her inability to make choices that were in Bailey's best interests. Considering these facts in addition to those discussed in our Ground D analysis, we find that the trial court had ample evidence before it to conclude that Krystal's lifelong drug addiction was not likely to subside. We find the evidence legally and factually sufficient to show that Krystal engaged in conduct that endangered Bailey's physical or emotional well-being.

Because we find the evidence sufficient to support the trial court's Grounds D and E findings, we overrule Krystal's first point of error.

## IV.     Sufficient Evidence Supports the Best-Interest Finding

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at \*7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

In determining the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (Supp.). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

The evidence showed that Krystal and Bailey were bonded to and loved one another. Even so, Chism and Mizell testified that the child also cared for her foster family. As a result, we find the first *Holley* factor neutral.

As for the second and third *Holley* factors, Mizell testified that Bailey had special needs because of her autism and would need "intensive care." According to Chism, Krystal did not complete the portion of her family service plan that would have trained her on how to parent an autistic child. Bailey would also require surgery during her lifetime to remedy injuries caused during the accident. Chism and Mizell both said Krystal was unable to care for Bailey, and Chism testified that Krystal's drug addiction and poor life choices would continue to endanger the child. We find that the second and third *Holley* factors favor terminating Krystal's parental rights.

Next, Krystal's history, failure to complete the family service plan, use of drugs during the pendency of the case, and absence from several visitation opportunities demonstrated a lack of parental abilities and showed that her relationship with Bailey was not proper. Although there

12

were several programs to assist Krystal, the positive drug tests and her choice to date a methamphetamine addict after release from inpatient drug treatment showed that the programs were not working. We find the fourth, fifth, and eighth *Holley* factors against Krystal.

While Krystal's plan was to return the child to the home where she had previously used methamphetamine, the instability of Krystal's home was demonstrated by her past actions, and Chism testified that the home was inappropriate for Bailey while Krystal was still using drugs. On the other hand, Bailey was placed in an appropriate home with a loving foster family that could care for her needs and were considering adopting her. Mizell testified that Bailey was thriving under the foster family's care, enjoyed her school, and had a routine. We find that the sixth and seventh *Holley* factors weigh in favor of terminating Krystal's parental rights.

While Krystal cited lack of transportation as the reason for failing to complete some portions of the family service plan, Krystal admitted that her transportation issues were fixed, but she never completed the plan. Also, her excuse that she could have tested positive after release from rehab because she was having intercourse with a man that was using copious amounts of methamphetamine only served to emphasize her poor decision making. We find that the remaining *Holley* factors favor terminating Krystal's parental rights.

We conclude that the Department established, by clear and convincing evidence, that terminating Krystal's parental rights was in Bailey's best interests. As a result, we overrule Krystal's last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

13

Scott E. Stevens
Justice

Date Submitted:     August 17, 2020
Date Decided:       August 18, 2020